IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS


S.T.,[1]

                    Plaintiff,

vs.                                        Case No. 21-2081-SAC

KILOLO KIJAKAZI,
Acting Commissioner of Social Security
Administration,

                    Defendant.


**MEMORANDUM AND ORDER**

     This is an action appealing the denial of Social Security
disability benefits.  Plaintiff filed her application for benefits
on August 14, 2018, alleging that she has been disabled since
September 28, 2014.  An administrative law judge (ALJ) conducted
a hearing on June 11, 2020, considered the evidence, and decided
on July 1, 2020 that plaintiff was not qualified to receive
benefits.  This decision has been adopted by defendant.  This case
is now before the court upon plaintiff's request to reverse and
remand the decision to deny plaintiff's application for benefits.

I. Standards of review

     To qualify for disability benefits, a claimant must establish
that he or she was "disabled" under the Social Security Act, 42
U.S.C. § 423(a)(1)(E), during the time when the claimant had

---

[1] The initials are used to protect privacy interests.

1

"insured status" under the Social Security program.  See <u>Potter v. Secretary of Health & Human Services</u>, 905 F.2d 1346, 1347 (10th Cir. 1990); 20 C.F.R. §§ 404.130, 404.131.  To be "disabled" means that the claimant is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which . . . has lasted or can be expected to last for a continuous period of not less than 12 months."  42 U.S.C. § 423(d)(1)(A).

The court must affirm the ALJ's decision if it is supported by substantial evidence and if the ALJ applied the proper legal standards.  See <u>Wall v. Astrue</u>, 561 F.3d 1048, 1052 (10th Cir. 2009).  "Substantial evidence" is "'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" <u>Biestek v. Berryhill</u>, 139 S.Ct. 1148, 1154 (2019)(quoting <u>Consolidated Edison Co. v. NLRB</u>, 305, U.S. 197, 229 (1938)).  This standard is "not high," but it is "'more than a mere scintilla.'" <u>Id.</u>, (quoting <u>Consolidated Edison</u>, 305 U.S. at 229).  It does not require a preponderance of the evidence.  <u>Lax v. Astrue</u>, 489 F.3d 1080, 1084 (10th Cir. 2007).

The court must examine the record as a whole, including whatever in the record fairly detracts from the weight of the defendant's decision, and on that basis decide if substantial evidence supports the decision.  <u>Glenn v. Shalala</u>, 21 F.3d 983, 984 (10th Cir. 1994) (quoting <u>Casias v. Secretary of Health & Human</u>

Services, 933 F.2d 799, 800-01 (10th Cir. 1991)).  The court may not reverse the defendant's choice between two reasonable but conflicting views, even if the court would have made a different choice if the matter were referred to the court de novo.  Lax, 489 F.3d at 1084 (quoting Zoltanski v. F.A.A., 372 F.3d 1195, 1200 (10th Cir. 2004)).  The court reviews "only the sufficiency of the evidence, not its weight."  Oldham v. Astrue, 509 F.3d 1254, 1257 (10th Cir. 2007).

"In addition, as long as '[the court] can follow the [ALJ's] reasoning in conducting our review, and can determine that correct legal standards have been applied, merely technical omissions in the ALJ's reasoning do not dictate reversal.'"  Garcia v. Commissioner, SSA, 817 Fed.Appx. 640, 645 (10th Cir. 2020)(quoting Keyes-Zachary v. Astrue, 695 F.3d 1156, 1166 (10th Cir. 2012)). The court "'will generally find the ALJ's decision adequate if it discusses the uncontroverted evidence the ALJ chooses not to rely upon and any significantly probative evidence the ALJ decides to reject.'"  Id., quoting Wall v. Astrue, 561 F.3d 1048, 1067 (10th Cir. 2009)).

II. Summary of the ALJ's decision

There is a five-step evaluation process followed in these cases which is described in the ALJ's decision.  (Tr. 12-13). First, it is determined whether the claimant is engaging in substantial gainful activity.  Second, the ALJ decides whether the

3

claimant has a medically determinable impairment that is "severe" or a combination of impairments which are "severe."  At step three, the ALJ decides whether the claimant's impairments or combination of impairments meet or medically equal the criteria of an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1. Next, at step four, the ALJ determines the claimant's residual functional capacity and then decides whether the claimant has the residual functional capacity to perform the requirements of his or her past relevant work.  Finally, at step five of the sequential evaluation process, the ALJ determines whether the claimant is able to do any other work considering his or her residual functional capacity, age, education and work experience.

In steps one through four the burden is on the claimant to prove a disability that prevents performance of past relevant work. Blea v. Barnhart, 466 F.3d 903, 907 (10th Cir. 2006).  At step five, the burden shifts to the Commissioner to show that there are jobs in the economy with the claimant's residual functional capacity.   Id.   In this case, the ALJ decided plaintiff's application should be denied at the fourth step of the evaluation process and that plaintiff did not qualify for benefits at step five as well.

The ALJ made the following specific findings in his decision. First, plaintiff meets the insured status requirements for Social Security benefits through June 30, 2024.  Second, plaintiff has

not engaged in substantial gainful activity since December 31, 2016.   Third, plaintiff has the following severe impairment: degenerative disc disease of the cervical, thoracic and lumbar spine status post anterior cervical discectomy and fusion.

Fourth, plaintiff does not have an impairment or combination of impairments that meet or medically equal the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1.   Fifth, plaintiff has the residual functional capacity (RFC) to perform light work as defined in 20 C.F.R. § 404.1567(b) with the following limitations:  plaintiff can occasionally climb ramps and stairs, but never climb ladders, ropes, or scaffolds; and plaintiff can occasionally balance, stoop, kneel, crouch and crawl.

The ALJ determined that with this RFC plaintiff could perform her past relevant work as a sales service promoter as actually and generally performed, and work as a photocopy machine operator, marker and collator operator.

III. <u>The denial of benefits shall be affirmed.</u>

    A. <u>The ALJ's discussion of the evidence</u>

Plaintiff suffers from back pain predominantly.   She told the ALJ that her pain started in July 2013 after a vehicular accident which led to a fourth back surgery.   (Tr. 17).   Plaintiff, however, reported significant income after the alleged onset date and through 2016.   (Tr. 14).   So, the ALJ concluded that plaintiff had not engaged in substantial gainful activity since December 31,

2016.  The ALJ also noted that plaintiff worked as a real estate agent in 2017 and 2018, and that she had positions as a jeweler and as a driving instructor in 2018.

He discussed diagnostic images of plaintiff's spine and he reviewed plaintiff's "routine and conservative" treatment, mainly consisting of narcotic medications.  According to the ALJ, these medications made her pain "manageable," although the pain had been increasing.  (Tr. 18).

The ALJ also reviewed plaintiff's physical examinations which included findings that plaintiff was not in acute distress, had a steady and normal gait, had normal strength in her extremities, and full range of motion in hips, knees and ankles, and normal straight leg raising tests.  The ALJ concluded that plaintiff's subjective pain allegations were not supported by the evidence as a whole and that the medical record failed to document "consistent clinical signs and findings showing any focal neurological or sensory loss."  (Tr. 18).

The ALJ considered plaintiff's activities of daily living (ADLs), noting that plaintiff traveled independently, cared for her children and a dog, prepared meals, did laundry, cleaned bathrooms, vacuumed, mowed the lawn, shopped in stores, played tennis and volleyball and drove.  (Tr. 18).  He also discussed plaintiff's work as a certified lifeguard in 2019, and the CPR and physical requirements for that work.  (Tr. 19).  The ALJ concluded

6

that plaintiff's regular activities and lifeguard training were
inconsistent with plaintiff's complaints of disabling symptoms.
(Tr. 19).

The ALJ considered the 2016 medical opinions of plaintiff's
treating nurse and determined that the opinions were not supported
by the nurse's treatment notes or plaintiff's work as a lifeguard.
(Tr. 19).  He considered the opinions of two state agency medical
consultants that plaintiff could perform a range of light work
with postural limitations.  He found these opinions to be supported
by and consistent with the medical record.  (Tr. 20).

B.   The denial of benefits is supported by substantial
evidence.

Plaintiff's first argument to overturn the denial of benefits
is that the ALJ's RFC findings are not supported by substantial
evidence.   Plaintiff develops this argument with several
subpoints.

1.  Functional limitations from cervical and thoracic
impairments

Plaintiff contends that the RFC is unsupported because the
ALJ found that plaintiff had severe degenerative disc disease of
the cervical and thoracic spine, but did not describe any
significant functional limitations from those impairments.  The
court disagrees with this interpretation of the ALJ's decision.
As the court reads the ALJ's decision, the RFC includes the
limitations the ALJ found from all of plaintiff's severe and non-

severe impairments. The ALJ stated that he considered all of plaintiff's symptoms and all of plaintiff's impairments. (Tr. 15-16). These statements are entitled to credence. See <u>Flaherty v. Astrue</u>, 515 F.3d 1067, 1071 (10th Cir. 2007). Further, the ALJ's review of the medical evidence discussed images of plaintiff's cervical and thoracic spine. (Tr. 17-18).

Plaintiff's citations to <u>Givens v. Astrue</u>, 251 Fed.Appx. 561, 567 (10th Cir. 2007) and <u>Timmons v. Barnhart</u>, 118 Fed.Appx. 349, 353 (10th Cir. 2004) are distinguishable. In <u>Givens</u>, the Tenth Circuit did not dispute the ALJ's evaluation of a claimant's depression as "mild" because the ALJ listed it as a severe impairment, although the court remarked that it was an "odd inconsistency." <u>Id.</u> Rather, the court held that the finding of mild limitations from depression had "little support in the record . . ." and in fact evidence in the record showed the mental impairments were "anything but mild." <u>Id.</u> Likewise, in <u>Timmons</u>, where the court found that the loss of an eye was a "severe" impairment but had an "insignificant" effect on the capacity for sedentary work, the court held that the ALJ did not adequately support the finding of insignificance.

Here, the ALJ did not state that plaintiff's cervical and thoracic spine impairments were "mild" or "insignificant."

Moreover, the court finds, as explained further below, that ALJ's RFC determination has adequate support in the record.[2]

> 2. <u>Staleness</u>

The ALJ found that the opinions of two state agency medical consultants were "supported by detailed notes of thorough reviews of the medical record as a whole," and were "consistent with the record of evidence showing the claimant is able to work as a certified lifeguard." (Tr. 20). He considered their opinions "persuasive." (Tr. 20). Plaintiff contends that these opinions are not substantial evidence to support a denial of benefits because the doctors did not review medical evidence post-dating their opinions that show a worsening of plaintiff's condition. Specifically, plaintiff refers to: an MRI of plaintiff's cervical spine on December 30, 2019; an MRI of plaintiff's lumbar spine on the same date; a visit to Dr. Caruso for urinary incontinence; and examinations by Dr. Chandra.[3]

---

[2] Plaintiff further cites <u>Hamby v. Astrue</u>, 260 Fed.Appx. 108, 112 (10th Cir. 2008); <u>Friday v. Colvin</u>, 2015 WL 3969632 *3 (D.Kan. 6/30/2015); <u>Cade v. Colvin</u>, 2015 WL 1208978 *4 (E.D.Okla. 3/17/2015); and <u>Lindberg v. Colvin</u>, 2013 WL 3315096 *5 (D.Kan. 7/1/2013). These cases are also distinguishable because the ALJs in those cases failed to attribute any functional limitation to "severe impairments," or failed to support the lack of limitations with a discussion of the record, or failed to discuss the question entirely.

[3] In her reply brief, plaintiff makes a new argument suggesting that the state agency medical consultants did not examine many of the medical records in the administrative record filed with the court. Doc. No. 17, p. 2. The court rejects this contention as improperly presented. The court further notes that each consultant's report indicated that longitudinal treatment records were reviewed. (Tr. 74, 87).

This argument does not warrant reversing the denial of benefits for the following reasons. First, ALJ cited more evidence to support his conclusions than the opinions of the state agency consultants. Those opinions provided only some of the support for his decision.

Second, the staleness argument in essence asks the court to reweigh the evidence. The ALJ considered the medical record, including the chronology of the evidence. He specifically considered the MRI of plaintiff's cervical spine[4] and the MRI of plaintiff's lumbar spine from December 2019.[5] He discussed plaintiff's reports of urinary incontinence, noting <u>inter alia</u> that plaintiff appeared to have received little treatment. (Tr. 15). He also referred to records from Dr. Chandra in his discussion of the evidence. (Tr. 17, referring to Ex.3F/22 and Tr. 18, referring to Ex. 3F/4).

The ALJ also reviewed plaintiff's monthly medical visits before and after the December 2019 MRIs. (Tr. 18). The results of the visits were relatively consistent before and after December 2019. Largely, they show: no acute distress; normal strength,

---

[4] He said it "revealed moderate cervical spondylosis, reactive marrow changes and posterior ridging with mild canal narrowing at C5-C6, C6-C7, and lesser extent C4-C5, focal disc osteophyte complex to the right of the midline at C2-C3, and minute disc osteophyte complex left of the midline at C7-T1." (Tr. 17-18).

[5] He said it "showed the previous fusion at L5-S1 with anterior posterior metallic hardware, posterior laminectomy changes, and a bulging disc slightly accentuating L4-L5 with an increased prominence of the central disc annular fissure." (Tr. 17).

gait and sensation; negative straight leg raising tests; and complaints of constant and significant pain which was relieved 30% to 50% by medication.  This suggests that the opinions of the state agency consultants were not stale because the medical evidence developed after their reviews did not materially alter the understanding of plaintiff's condition.  See Tarpley v. Colvin, 601 Fed.Appx. 641, 644 (10th Cir. 2015); see also, Fletcher v. Kijakazi, 2021 WL 3849413 *9 (D.Kan. 8/27/2021); R.S. v. Saul, 2021 WL 2156412 *6 (D.Kan. 5/27/2021); JoAnn Marie W. v. Saul, 2020 WL 5908960 *9 (D.Kan. 10/6/2020).

Plaintiff cites Chapo v. Astrue, 682 F.3d 1285 (10th Cir. 2012) in her reply brief to support a remand for an updated examination or report in this case.  Unlike this case, the record in Chapo showed deteriorating physical findings (positive straight leg raises, guarded gait) and positive imaging results (broad-based disk bulge and bilateral encroachment on the S1 nerve root) approximately 18 months after a doctor's opinion which the ALJ relied upon to deny benefits.  The Tenth Circuit considered these "material changes" in the record.  682 F.3d at 1292.

Plaintiff emphasizes in her reply brief that the December 2019 lumbar MRI showed an increased prominence of the central disc annular fissure.  As this argument suggests, a prior MRI from February 2019 showed an annular fissure in the same area.  (Tr. 655).  There is no medical opinion or other evidence in the record,

however, linking this condition to an exacerbation of plaintiff's symptoms. To reiterate, the examination results have been relatively consistent over a significant time.

### 3. Lifeguard evidence

The ALJ remarked that plaintiff can swim and has been able to work as a certified lifeguard which is "a medium exertional occupation that requires extensive physical ability, alertness and concentration." (Tr. 19). The ALJ recounted plaintiff's description of the physical demands of the certification process and concluded that the "process is wholly inconsistent with the claimant's allegations of debilitating lower back pain, nerve damage in her legs, pain in her arms, and pain in her neck." (Tr. 19). He concluded that "[o]verall, while the claimant's earnings as a lifeguard may not preclude disability[,] the activity of being a lifeguard itself is quite contrary to a finding of disability." (Tr. 19).

Plaintiff contends that the ALJ erred by failing "to consider and/or include in his decision" plaintiff's testimony that: plaintiff only worked as a lifeguard part-time, 4 hours per day, 4 days per week; she worked for a half hour and then was off half an hour; it was a small pool with 2 to 3 lifeguards on duty at any given time; and while working plaintiff could sit or stand as she desired. Plaintiff also faults the ALJ for failing to determine when plaintiff obtained certification.

This criticism does not warrant reversing the denial of benefits. The ALJ listened to and cited plaintiff's testimony. (Tr. 19). He did not confuse the lifeguard position with full-time work. His questioning at the hearing acknowledged the part-time nature of the lifeguard job as well as the breaks plaintiff could take.[6] (Tr. 61). Also, at step four of his analysis, the ALJ did not consider the lifeguard job as full-time past relevant work which plaintiff might be able to perform. For these reasons, the court finds that the ALJ did not misunderstand the evidence or misrepresent the evidence.[7] Other courts have considered evidence of part-time employment and lifeguard certification when reviewing subjective allegations of pain and disability. See Olson v. Commissioner, SSA, 843 Fed.Appx. 93, 97 (10th Cir. 2021)(part-time work); Romero v. Colvin, 563 Fed.Appx. 618, 622 (10th Cir. 2014)(recommendation to get a part-time job); Lopez v. Barnhart, 183 Fed.Appx. 825, 830 (10th Cir. 2006)(part-time work); Jerome M.H. v. Berryhill, 2019 WL 994966 *4 (C.D.Cal. 2/7/2019)(becoming certified as a lifeguard is inconsistent with alleged limitations in ability to walk, sit, stand, bend, squat and kneel). In the end, we consider plaintiff's arguments as asking the court to

---

[6] Plaintiff's counsel at the hearing could have elicited the date of plaintiff's lifeguard certification if that information was relevant.
[7] Plaintiff's citation to Sitsler v. Astrue, 410 Fed.Appx. 112, 117-18 (10th Cir. 2011) is therefore distinguishable.

reweigh the evidence which the court may not do.  See <u>Hendron v.</u>
<u>Colvin</u>, 767 F.3d 951, 956 (10th Cir. 2014).

       4. <u>Nurse Molstad's opinion</u>

On or around April 5, 2016, Jessica Molstad, an APRN who
treated plaintiff, signed a form indicating that plaintiff could
not lift more than 15 pounds, could not lift overhead, and needed
frequent position changes.   (Tr. 392-93).   This opinion was
written, of course, prior to the December 31, 2016 date when
plaintiff last engaged in substantial gainful activity.

The ALJ did not find this opinion persuasive, stating that it
was not supported by treatment notes and was not consistent with
the evidence in the record.   The ALJ cited plaintiff's certified
lifeguard position as inconsistent evidence.   Earlier in his
decision, the ALJ cited a treatment note from Molstad dated March
1, 2016 and a letter by Molstad to a referring doctor dated April
28, 2015 discussing examination results and a treatment plan for
plaintiff. (Tr. 18)(citing Ex. 1F/130 and 1F/138).  These portions
of the record showed plaintiff with a steady and normal gait, and
normal muscle strength in her arms and legs.

Plaintiff cites numerous treatment notes from Molstad from
2015 and into 2017.  These notes sometimes show:  decreased flexion
and extension of plaintiff's spine; indications of back tightness,
tenderness or spasm; some positive straight leg raising tests and
some negative; and occasional radiating pain.   They also show

14

normal strength and normal gait.  The state agency physicians reviewed Molstad's notes and other parts of the record before reaching their conclusions in 2019 that plaintiff could perform light work.  The ALJ found their reviews persuasive.

While there may be some backing in the treatment notes for Molstad's opinion, the court finds that plaintiff's argument does not warrant reversing the denial of benefits.  Molstad does not explain how the medical evidence supports her rather conclusory opinion.  Moreover, the ALJ's review of all the medical evidence and the discussion contained in his order provides adequate support for his decision under the standards which control these cases. See Olson, 843 Fed.Appx. at 96-97 (rejecting attacks upon ALJ's decision where reasoning can be followed, correct legal standards were applied, discussion of evidence in more depth would not compel reversal, and the arguments against the evaluation of a doctor's observations amounted to a request to reweigh the evidence); see also Allman v. Colvin, 813 F.3d 1326, 1333 (10th Cir. 2016)(where the evidence is mixed, the ALJ is entitled to resolve evidentiary conflicts).

C. The ALJ did not commit legal error by failing to expressly engage in a function-by-function analysis of plaintiff's physical capacity.

Finally, plaintiff contends that the denial of benefits should be reversed because the ALJ failed to identify plaintiff's functional limitations and assess her work-related abilities on a

function-by-function basis as required by SSR 96-8p.  Plaintiff asserts that the ALJ simply stated that plaintiff could perform light work with certain limitations not related to the strength functions of sitting, standing, walking, lifting, carrying, pushing or pulling.  This argument was recently rejected on appeal under similar circumstances in Sewell v. Commissioner, SSA, ___ Fed.Appx. ___, 2021 WL 3871888 *2-4 (10th Cir. 8/31/2021).[8]  The Circuit held that "SSR 96-8p does not forbid expressing the RFC in terms of exertional categories in the step-five inquiry."  Id. at *3.  Here, the ALJ found at step five that there were jobs plaintiff could perform, other than her prior relevant work, that existed in significant numbers in the national economy.  Plaintiff does not specifically dispute this finding.

Further, the court disagrees with plaintiff's suggestion that it is impossible to determine how the ALJ assessed plaintiff's abilities to walk, sit, stand, push and pull.  The ALJ referred to the definition of light work at 20 C.F.R. 404.1567(b) (Tr. 16) when he described plaintiff's RFC and he supported his RFC findings by referencing the opinions of Dr. Bland and Dr. Byrnes (Tr. 74-75, 87-88) as persuasive and consistent with the medical record. Those opinions made specific strength function findings.  From

---

[8] See also, Jeske v. Saul, 955 F.3d 583, 596 (7th Cir. 2020)(citing cases from five circuits, including the Tenth Circuit, which conclude "that a decision lacking a seven-part function-by-function written account . . . does not necessarily require remand").

this the court concludes that the ALJ implicitly found that plaintiff had a functional capacity consistent with 20 C.F.R. 404.1567(b) and the findings of Dr. Bland and Dr. Byrnes.

IV. <u>Conclusion</u>

As explained in this memorandum and order, the court rejects plaintiff's arguments to reverse and remand the denial of benefits to plaintiff.

**IT IS THEREFORE ORDERED** that judgment be entered pursuant to the fourth sentence of 42 U.S.C. § 405(g) AFFIRMING the decision to deny benefits.

Dated this 14th day of September 2021, at Topeka, Kansas.


s/Sam A. Crow
U.S. District Senior Judge